JOSEPH TROJAN, COUNSEL FOR THE APPELLANT In this particular case, patents that had been enforced for many years in other parties had actually settled cases and paid large sums of money after being litigated for a long time. In this case, some of these claims were found to be invalidated. We submitted two declarations from those skilled in the art showing that the cited prior art references in combination could not have been combined to come up with the claimed invention. We submitted substantial evidence of secondary factors of non-obviousness of $100 million sales that the sales were related to the claimed invention, the safety feature, and also the copying of the device, and a huge number of units sold. Even though they had their own technology, they chose to use our technology. Now, what is disturbing to us in this case is that our expert declarations were excluded because we had not submitted a written report. We did not submit a written report because the defendant's expert had never opined on the references that were used to invalidate the patents or invalidate the claims. Therefore, there was no basis for us to respond. It is not our burden to prove the validity of the patents, as the Court is well aware. It is their burden to prove that the patents are invalid. May I interrupt for just a moment? You can return to your introduction, but I just wanted to make sure that I understand the scope of your asserted claim, and particularly the limitation regarding the safety device, which is all that's at issue here. My understanding is that, in essence, your contention is that if you have a locking member that interferes with the operation of the lighting device and is biased back towards a locking position when it's released, that that's enough to infringe. Is that fair, or is that an overly broad characterization of your position? I'm always reluctant to summarize a claim because, as you know, each word has meaning. Okay, but do your best. To some extent, that's true. The feature of it is that there is nothing in it that keeps it in a locked position. If I press down on that, I can't. You have to keep your thumb on the device, and then when you release it, it pops back locked. Correct. Other than that, you say that this was copied and so forth, but presumably, if that's your invention, then anything that had a pop-back lock would be copying and would infringe, right? Well, I wish that were true. I certainly know that we have many competitors that I've not been able to sue under these patents. But with respect to the safety device, that's all there is to it, right? That's correct, but there's many alternatives to it. And it's not surprising that the claim is as broad as it is because, literally, this was a prior patent. This was one of the very first. When you look at the prior art being cited by the examiner against this application, there are utility lighters that had no safety device at all. There were cigarette lighters that were cited against it, but essentially, Tokai had come up with one of the first child-resistant mechanisms for a utility lighter. And today, it's a very, very crowded art. Patents are far more limited, and the 775 patent, and these patents are cited by the Patent Office frequently against other technology. But it's that kind of hindsight that the district court used that we do not believe that it's appropriate because the court substituted its own judgment for those of the experts, and the court needed to put itself back in the mind of one skilled in the art at a time before child-resistant mechanisms were incorporated into utility lighters. And back in the early 90s when this invention was being developed and when it was filed in the 90s, that simply didn't exist, so it's not surprising that it's so broad. Now, with respect to the exclusion of the evidence, I think this is an issue that should be addressed in a published decision, in fact, because basically, the court excluded the only evidence of non-obviousness, and I say that sincerely because the defendants' expert refused to say that the combination that the court combined would have been done by one skilled in the art at the time of the invention. Never said that. And so the only evidence with respect of not obviousness or non-obviousness was our expert declarations, and those expert declarations were not conclusory. They went through great detail to explain the different mechanisms of the prior art and why one could not have simply combined those things. There was too much mechanical skill required to modify the prior art to come up with the subject lighter. And so, but the published... But do you mean too much skill required to come up with the particular design that's found in the figures of the patent or too much skill to come up with any design which satisfied the requirements of the safety mechanism limitation of the claim? Too much... It was not at all clear how you would take the prior art, which was common in cigarette lighters, and how you could apply it to a utility lighter, and not only apply it to a utility lighter, but have a mechanism that would be put into an unlocked position and could be kept in an unlocked position. They took advantage of the construction of a utility lighter, the way it's held, to come up with a new mechanism that was never even capable of being left on a table for a child to pick up with the safety unlocked. Which consisted of having a thumb-operated safety with a spring that biased it back into the locked position as soon as you took your thumb off. Along with all the other mechanisms that made the art. But all the other mechanisms are not claimed. That's true because we were, being one of the first, you're entitled to claim it much more broadly. Right, but you're also exposed, therefore, to a much broader attack for invalidity. The broader your claim, the more vulnerable you are to invalidity. But we get back to the question of, we are constantly warned as attorneys by this court, not to substitute attorney argument for evidence. And yet, that's exactly what happened in this particular case. The court substituted pure argument for overwhelming evidence. At the very least, that the evidence should have been put on in a trial. At the very least, we should have been entitled to have those witnesses testify. We should have been allowed to have our managers testify that people buy it because of our safety mechanism. Why isn't product so incredibly popular? Even the defendant's salespeople admit that it's the safety feature, this particular safety feature, not just any safety feature, that people look for. So it's the, they have other alternatives in the market to use, but they choose to use this particular mechanism. And so all those are secondary factors that should not have been excluded. And specifically, it would be extremely helpful for district courts to be given guidance that when someone has the burden and they don't submit an expert report on that particular prior art, that the patent owner does not have a duty to go rebut what does not exist. There was nothing to rebut, yet we were criticized for not submitting an expert report when we had nothing to rebut because their expert had not opined that this was an obvious. And so that's a fundamental question that I think needs to be answered because I think that that's where the whole road that led to an improper decision in this case began, with the exclusion of that testimony. And because we had not submitted a report, there was Okay, we'll save the rest of your time, Mr. Trojan. Mr. Trope. Good morning. My name is Conrad Trope. I'm here on behalf of the Pelley's and Cross Appellants. Let me ask you a question at the outset so we know what the score is. Is your cross appeal a conditional cross appeal, or is it, if you were to win on the invalidity issue, would there be a need for us to address the cross appeal, or is it simply in the event that you lose on the collateral, it is a precautionary, I would call it a precautionary appeal, or as you've termed it, a dependent? Okay, that's right. That's the answer. I understand. Okay, proceed. Judge Bryson touched upon what is really the fulcrum of this case, the plaintiff appellant, by insisting that it's claimed construction and it obtained a claimed construction order. It basically tossed out the concepts of direct contact. Then obviously you're going to have claims that are so broad that they're going to swallow up the prior art and in essence be infected by them in terms of a declaration of obviousness. Indeed, counsel tried talking about a utility lighter as being somewhat separate from a cigarette lighter. Well, leaving aside what common sense might dictate, even the PTO in listing its references to these three patents did list the Morris patent, which is a cigarette lighter, and that is not being contested here. Indeed, the district court felt that plaintiff had conceded that issue in its MSJ order. The claims are construed in light of the specification. If these claims were enforced against a cigarette lighter, that would be perhaps their specification would resist that construction. So I'm not sure I understand this argument. You're telling us we should construe the claims not in light of the specification but in the absence of the specification in order to find prior art that they may wait on. No, I'm sorry if I caused that confusion, all I'm saying is that the plaintiff appellant's position is that somehow a utility lighter is such a clear and distinct removed technology that one could find in a cigarette lighter cannot be analogized or viewed as related technology. That is all I'm simply saying. What about the argument though that if one combined these references they wouldn't work? This court has actually spoken to that on several occasions since its creation. There's actually three, forgive me, three cases in which the court has basically said when physically combined each and every element of the prior art to make a finding of obviousness. In fact, this court has said that sometimes it may be technologically feasible but not economically viable and that in no way whatsoever diminishes the finding of obviousness. In particular, this court stated in Datascope Court versus SNEC 776 F2nd 320 at 327. Also Orthopedic Equipment Co. versus U.S. which was cited by both sides 702 F2nd 1005 and 1013. Both cases basically said that even if the features of one reference cannot be substituted physically into the structure of another reference that does not lessen or remove the technology from being declared or the patent from being declared obvious. In other words, you're saying you can take pieces from one reference and pieces from another. That is not what I was, because the case law also says you're not allowed to just cherry pick and pick and choose and I'm not and we are not in any way suggesting that. If anything, what we're emphasizing that it's not just what the particular invention is the prior art but what it teaches and that is basic federal circuit horn book law. To look at what is being taught overall not limiting yourself to just the physical embodiment of a particular invention in the prior art. With respect to some of the secondary considerations, I believe that there needs to be a little bit of detail addressed here. I would ask the court to take a look in its deliberations at Joint Appendix 2033 as well as 2045, 46 and 47. What you have there is the deposition of the Vice President of Marketing for plaintiff Appelli Scripto and he admits, number one, that for the relevant time period every manufacturer had to have a child safety device. So in pushing or in marketing the Scripto-like utility lighter, he openly admits several times that he wasn't pushing the fact that it has a child safety feature but that it's adult user friendly, meaning you won't get hung up trying to use it. Well, this is definitely the kind of situation in which the feature that is perhaps the cause of the great sales is not the feature that is disclosed in the patent. Indeed, these patents, all of them talk about child safety features. They're not talking about something being adult user friendly and therefore plaintiff Appellant has basically admitted that the feature that's the focus of the patent is not the feature of its marketing campaign. Therefore, on that basis alone, secondary consideration of sales, there is no nexus as the district court found. What about the absence of expert evidence on their side? This case, candidly, I've never seen a case where experts on both sides were somehow not able to participate. But the district court is granted great deference in what it chooses to admit or exclude. And with respect to the experts that were excluded on the plaintiff's side, one has to look at what is the purpose behind Rule 26, the expert disclosure, as well as Rule 37. In addition, in addition to having a just and economically efficient procedural system, we also have repeatedly seen the notes to those rules as well as repeated... You've moved on to the other side's experts, but while you're there, I do want to return to your expert issue. But isn't it the case that, I guess it's Mr. Wong, I'm not sure I have the name right, that's my predecessor, yes. That was the employee expert, correct? Oh, I'm sorry, isn't that the name? Yes, Wong, sorry. In any event, okay, the employee expert, Rule 26 wouldn't bar that employee expert from testifying without a report, correct? In a perfect world, but not when that expert... In the world we live in, Rule 26 doesn't apply. On its face, it would appear not to apply. However, when that witness has testified in his deposition that at this juncture he's not providing an expert opinion, then that Rule 26 does not allow him to come back in four months later and ambush the other side. But this is summary judgment, not an ambush with testimony appearing unannounced and undeposed. When someone says, I'm not giving an expert opinion at this time and is not identified as an expert, as an employee, and then four months later, in come the moving papers and he's putting in an expert declaration... But suppose he'd never had a deposition and what happened was, at summary judgment, he came in with a declaration. No report, just a declaration, period. Any problem? I would argue the equities, which is that it's an ambush. Because Rule 26 also says disclose, and you have a duty to disclose as quickly as possible, who's going to be your witnesses, who's going to be your experts, and what their opinions are supposed to be. At before summary judgment, I thought that summary judgment was sort of the first step, not the step after all the disclosure is supposed to take place. Or at least, I mean, I understand that often summary judgment occurs after some amount of discovery, but it certainly doesn't seem to me unusual at all, certainly not in my experience, that the first time you see some of these affidavits from a variety of people, is it in the summary judgment motion, or opposition? I'm not challenging your experience, Your Honor, but the whole purpose that's been pounded into my head by various district court judges is that that Rule 26 report is not supposed to be just a casual exercise where you say, oh, my witnesses might be Bryson, Newman, and Lurie, but I'm not sure yet. It's supposed to be, there's supposed to be a, in a sense, a real effort of due diligence on the part of counsel to list who your potential witnesses, potential experts, are supposed to be. Well, we're talking again about summary judgment submissions. Yes. How could I, what do you mean by the notion that you would reveal in advance of your summary judgment opposition who your potential affidavits are going to be? Rule 26. I understand, but Rule 26, we both agree, it doesn't really apply to an employee. So, setting that aside, where's the ambush? I'm just- The ambush in this instance was that when this particular employee was deposed, he specifically, it was specifically stated he was not testifying as an expert, wasn't sufficiently familiar with all the patents, and would not be rendering such an opinion on that. Otherwise, we wouldn't have, there wouldn't be a beef. Okay, I understand. And your, the absence of evidence on your side? Well, the court felt that we had not been diligent in timely presenting our expert declarations and, you know, frankly, we felt that we had been searching for prior art and it was a matter of timing in which we finally came across with what we thought was some additional prior art. That was your supplemental non-infringement? Consentions, yes. And we felt that, again, there's, you know, going back to the concept of ambush, the other side had four months in which it could have conducted discovery regarding those nine, the expert report as well as the prior, the nine prior art references that we sought to bring in. And therefore, we would say that she abused her discretion in that she presumed or made a finding that we had not been looking for prior art until it was too late when, in fact, we had been searching for prior art since the beginning of the case. One other point, in looking at technology here, bear in mind that even the florio lighter talks about using the thumb for disengaging the safety lock, that same thumb that you use on the plaintiff's utility lighter. So, we would contend that the teachings of the florio lighter were not the teachings of Florio Morris and the others are not so removed from their embodiment in the plaintiff's utility lighter. So, your case, I think, it really turns on the proposition that a cigarette lighter is I take it that your position is that if Florio were a utility lighter with exactly the same mechanism, the obviousness case would be an absolute cakewalk. Florio as well as Morris. Correct me if I'm wrong, but Florio, I recall, is the one that pops back. It pops back once you do the engagement, or you engage the lever to light. You're not able to have multiple firings with Florio. You have to disengage the safety lever each time. But the safety lever returns to the locked position automatically, not in Morris. In Morris, it returns. What you can do in Morris is that with your forefinger, you're able to keep the safety lever disengaged so that you can make multiple strikes if you want. And then once you release the lever, the lock automatically goes back engaged. Okay. Any more questions? Okay, thank you, Mr. Troge. Mr. Troge. Thank you, Your Honor. In fact, Easton did not begin their search for prior art until after the close of Discovery, and that's found at JA 1012 and JA 937 to 938 in the record. So the whole concept that they were diligent is simply not true. With respect to this issue being ambushed, Mr. Sung was disclosed in our initial disclosures as a potential witness. His deposition was taken. At the time his deposition was taken, that was before they had filed their summary judgments. The first that we had seen of any explanation of why these particular references could be combined and invalid patents was in their motion. So there had never been an expert report combining these references that we'd received to them. So therefore, at the time that Mr. Sung had taken his deposition, of course, he didn't have an opinion that the patents are valid. They are valid. And we had not been presented with anything to indicate that they were not, not in the form of any kind of argument that explained why these references could be combined. So in fact, there was no ambush, and he was disclosed in the initial reports. We do, on this issue of, the defendant would like to force us into a box and say that somehow we're saying that cigarette lighters are not part of the art with respect to utility lighters. We're not saying that. That would be ludicrous. The inventors that work in this area work on cigarette lighters and utility lighters many times on the same day. You agree that they're analogous art? They're definitely analogous art. It's no question about it. I cite it in invention disclosures to the Patent Office all the time. So that you think if Florio were a utility lighter, it would look very different than it does now. But would it still fall within the limits of your claim? Or put another way, what limitation of your claim with specific reference to the safety device would not be satisfied by Florio? Well, all of the claims refer to a lighting rod. Well, I know, but that's what I'm calling a utility lighter. A lighter with a lighting rod. Okay, so if Florio had a lighting rod, how would it not infringe your claims? Because I haven't tried to imagine Florio's, I'm not sure how that mechanism would operate in a utility lighter. If it was in a utility lighter, apparently it would not automatically return. It could be put in a locked position. Why not? The mechanism causes an automatic return in Florio, right? It does, but one of the distinctions is that it's held in an unlocked position. If there's a notch that when you push on it, the locking mechanism sits in a notch that keeps it unlocked. And so, if you were to do that in a utility lighter, you'd have to construct some mechanism to be able to do that, but it wouldn't be our mechanism because our mechanism automatically... But would it be your claimed mechanism? It might not be your commercial embodiment, but would it be what you've claimed? And if not, why not? Well, this is the kind of reasoning that gets so far removed from taking the prior art and constructing it using what's taught. It's literally to take Florio and a prior art utility lighter that was cited that didn't have any safety mechanism and combine these things to come up with this invention. You literally would need to use the claimed invention as the blueprint and use hindsight to reconstruct it because no such lighter existed that operated... A utility lighter existed that operated where it wasn't put into a locked anywhere before these patents that showed a mechanism where you didn't put it into an unlocked position and keep it there. Where you didn't put... With respect to the cigarette lighter prior art, there's no prior art among cigarette lighters before these utility lighters where when you unlocked it, it didn't stay unlocked. It could automatically return once you used the lighter and ignited it. Okay. Any more questions? Any more questions? Okay. Thank you, Mr. Trojan and Mr. Trill. Case is taken under submission. All rise. The honorable court is adjourned until this afternoon at 2 p.m.